## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BLUEWIRE MEDIA, LLC | : | |
| and STEVEN ACITO, | : | |
| Plaintiffs, | : | CASE NO.: 1:13-cv-03667-NLH-KMW |
| | : | |
| v. | : | |
| | : | |
| GLOUCESTER COUNTY | : | |
| REPUBLICAN COMMITTEE, | : | ELECTRONICALLY FILED |
| GOP VICTORY 2011, | : | |
| MARK CIMINO, and | : | |
| JOHN DOES 1 THROUGH 10 | : | |
| Defendants. | : | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT
## FOR FAILURE TO STATE A CLAIM UNDER FED. R. CIV. P. 12(b)(6)

Defendants, Gloucester County Republican Committee, GOP Victory 2011, and Mark Cimino, by their undersigned attorneys, respectfully submit this Memorandum of Law in support of their Motion to Dismiss the Complaint of Plaintiffs, Bluewire Media, LLC and Steven Acito, pursuant to FED.R.CIV.P. 12(b)(6).

<div style="margin-left:40%">

Anthony J. DiMarino, III
Emmett S. Collazo
**A.J. DiMarino, P.C.**
57 Euclid Street, Suite A
Woodbury, NJ 08096
(856) 853-0055
Counsel for Defendants,
Gloucester County Republican Committee,
GOP Victory 2011, and Mark Cimino

</div>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. iii

I.      PRELIMINARY STATEMENT .................................................1

II.     FACTS ....................................................................1

III.    ANALYSIS ................................................................5

  A.  Standards for Motion to Dismiss for Failure to State a Claim
      under Rule 12(b)(6) ....................................................5

  B.  Failure to State a Copyright Infringement Claim in Count I ...................8

    i.  *Count I must be dismissed because plaintiffs have no copyright
        registration* ........................................................8

    ii. *Defendants' actions constitute fair use* ..............................10

        1.  *Purpose and character of the use, including whether for commercial or
            non-commercial purpose.* ........................................12

        2. *Nature of the copyrighted work* .................................15

        3. *Amount and substantiality of the portion used* ...................16

        4.  *Effect on market or value of copyrighted work.* ..................18

  C.  Plaintiffs' tortious interference claim is preempted under the  Supremacy
      Clause, and should be dismissed .......................................21

    i.  *Plaintiffs' tortious interference claim is explicitly pre-empted by § 301 of
        the Copyright Act.* ..................................................21

    ii. *Count II violates the Supremacy Clause due to conflict preemption.* .........23

IV.     CONCLUSION ..........................................................255

# TABLE OF AUTHORITIES

## Cases

*4C, Inc. v. Pouls*,
   No. 11-00778 JEI, 2012 WL 2343042 (D. Del. June 19, 2012)............................9

*Abrams v. United States*,
   250 U.S. 616 (1919)................................................................................19

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) ......................................................8

*Ascend Health Corp. v. Wells*,
   No. 4:12-CV-00083-BR, 2013 WL 1010589 (E.D.N.C. Mar. 14, 2013)............11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................ passim

*Baldwin Cnty. Welcome Ctr. v. Brown*,
   466 U.S. 147 (1984)...............................................................................5

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007)...............................................................................5

*Bogosian v. Gulf Oil Corp.*,
   562 F.2d 434 (3d Cir. 1977) .................................................................5

*Boos v. Barry*,
   485 U.S. 312 (1988)..............................................................................18

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) ......................................................... 11, 16

*Buckley v. Valeo*,
424 U.S. 1 (1976)..................................................................................14

*Campbell v. Acuff-Rose Music, Inc.*,
510 U.S. 569 (1994)..................................................................... passim

*Citizens United v. Fed. Election Comm'n*,
558 U.S. 310 (2010)..................................................................... 14, 15

*Clark v. Amoco Prod. Co.*,
794 F.2d 967 (5th Cir. 1986) .............................................................11

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000)............................................................................24

*Dawes-Lloyd v. Publish Am., LLLP*,
441 F. App'x 956 (3d Cir. 2011)......................................................8, 9

*Denmark v. Russ Berrie & Co., Inc.*,
290 F.3d 548 (3d Cir. 2002) ................................................................8

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
307 F.3d 197 (3d Cir. 2002) ..............................................................23

*Eldred v. Ashcroft*,
537 U.S. 186 (2003).............................................................................10

*English v. Gen. Elec. Co.*,
496 U.S. 72 (1990)...............................................................................21

*Eu v. San Francisco County Democratic Central Comm.*,
489 U.S. 214 (1989).............................................................................14

*Evancho v. Fisher*,
423 F.3d 347 (3d Cir. 2005) .................................................................5

*Faulkner Literary Rights, LLC v. Sony Pictures Classics Inc.*,
  No. 3:12CV100, 2013 WL 3762270 (N.D. Miss. July 18, 2013) ........................11

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)........................................................................... 8, 15

*First Nat. Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978)...................................................................................19

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) ....................................................................6

*Goodman v. Praxair, Inc.*,
  494 F.3d 458 (4th Cir.2007) ...................................................................12

*Harper & Row v. Nation Enterprises*,
  471 U.S., 539 (1985)......................................................... 16, 17, 18, 20

*Hart v. Electronic Arts, Inc.*,
  717 F.3d 141 (3rd Cir. 2013) ..................................................................12

*Hedges v. United States*,
  404 F.3d 744 (3d Cir. 2005) .....................................................................7

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410, 1429–30 (3d Cir. 1997) ..................................................7

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
  184 F.3d 280 (3d Cir. 1999) .....................................................................7

*Jarvis v. A&M Records*,
  827 F.Supp. 282 (D. N.J. 1993).............................................................22

*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
  421 F.3d 199 (3d Cir. 2005) .....................................................................8

*Kehr Packages, Inc. v. Fidelcor, Inc.*,
  926 F.2d 1406 (3d Cir. 1991) ...............................................................................7

*Levey v. Brownstone Inv. Grp., LLC*,
  No. 11-395 ES, 2012 WL 295718 (D.N.J. Feb. 1, 2012) .....................................9

*Lovell v. Griffin*,
  303 U.S. 444 (1938).............................................................................................19

*Lucent Info. Mgmt., Inc. v. Lucent Technologies, Inc.*,
  5 F. Supp. 2d 238 (D. Del. 1998)........................................................................15

*McIntyre v. Ohio Elections Comm'n*,
  514 U.S. 334  (1995)............................................................................................19

*Meyer v. Grant*,
  414 U.S. 420 (1988).............................................................................................19

*Monitor Patriot Co. v. Roy*,
  401 U.S. 265 (1971).............................................................................................14

*New York Times v. Sullivan*,
  367 U.S. 254 (1964).............................................................................................19

*Orson v. Miramax Film Corp.*,
  189 F.3d 377 (3d Cir. 1999) ...............................................................................21

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ...............................................................................7

*Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ...............................................................................8

*Phillips v. Cnty. of Allegheny*,
  515 F.3d 224 (3d Cir. 2008) ................................................................6

*Profoot, Inc. v. MSD Consumer Care, Inc.*,
  CIV. 11-7079, 2012 WL 1231984 (D.N.J. Apr. 12, 2012) ..................................23

*Reed Elsevier, Inc. v. Muchnick*,
  559 U.S. 154 (2010)................................................................8, 9

*Righthaven LLC v. Realty One Grp., Inc.*,
  2:10-CV-1036-LRH-PAL, 2010 WL 4115413 (D. Nev. Oct. 19, 2010) .............11

*Roth v. United States*,
  354 U.S. 476 (1957)................................................................19

*Rudolph v. Yari Film Grp. Releasing*,
  CIV.A. 06-CV-1511DMC, 2007 WL 674708 (D.N.J. Feb. 23, 2007)................22

*S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*,
  181 F.3d 410 (3d Cir. 1999) ................................................................7

*Scheuer v. Rhoades*,
  416 U.S. 232 (1974)................................................................5

*Shaw v. Delta Air Lines, Inc.*,
  463 U.S. 85 (1983)................................................................21

*Shell v. City of Radford*,
  351 F. Supp. 2d 510 (W.D. Va. 2005)................................................................12

*Sims v. Viacom, Inc.*,
  2:11-CV-0675, 2012 WL 280609 (W.D. Pa. Jan. 31, 2012)................................9

*Sony Corp. of America v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984)................................................................16

*Stewart v. Abend*,
    495 U.S.207, 237-238 (1990) ...............................................................................15

*Suntrust Bank v. Houghton Mifflin Co.*,
    268 F.3d 1257 (11th Cir. 2001) ..........................................................................12

*Telebrands Corp. v. Exceptional Products Inc.*,
    No. 11–CV–2252, 2011 WL 6029402 (D.N.J. Dec.5, 2011) ...............................9

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
    210 F.Supp.2d 552 (D.N.J. 2002) .......................................................................23

*Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*,
    342 F.3d 191 (3d Cir. 2003) ........................................................................ 12, 20

*Warren Pub. Co. v. Spurlock*,
    645 F. Supp. 2d 402 (E.D. Pa. 2009) .................................................................16

*Zucker v. Quasha*,
    891 F.Supp. 1010 (D.N.J. 1995) ..........................................................................8

**Statutes**

17 U.S.C. § 107 ...................................................................................... passim

17 U.S.C. § 301 ...................................................................................... 22, 23

17 U.S.C. § 411 ...................................................................................8, 9

**Other Authorities**

The Federalist, No. 10, p. 130 (B. Wright ed. 1961) .............................................16

**Rules**

Fed. R. Civ. P. 12 .................................................................................6

**Constitutional Provisions**

U.S. Const., First Amendment ..................................................................... 14, 19, 24

U.S. Const., Art. VI, cl. 2..................................................................................... 21, 24

## I.    <u>PRELIMINARY STATEMENT</u>

This suit is an effort to stifle political speech and the process of vetting candidates.  As set forth below, it lacks support in law and in fact and should be dismissed.

First, plaintiffs fail to allege they possess a registration of the asserted copyright.  Second, the alleged infringement falls precisely within fair use. Finally, the state law claim of tortious interference is preempted under the supremacy clause of the United States Constitution.

## II.    <u>FACTS</u>

Plaintiffs are Bluewire Media, LLC, of West Berlin, New Jersey, and Steven Acito, who works at Bluewire Media. They allege to develop television, radio, print, informational and advertising pieces for clients. (Compl. ¶¶ 1, 2.)[1]

Among other items, plaintiffs allege to create "promotional campaigns and political spots … to be used in print, on the radio, for television viewing or targeted video." (Compl. ¶ 11.)

Plaintiffs' clients in 2010 were politicians Heather Simmons ("Simmons") and Robert Zimmerman ("Zimmerman"), who ran for the office of Freeholder in Gloucester County, New Jersey. (Compl. ¶ 12.)  Plaintiffs allege to have created a

---

[1] Defendants take the facts alleged in the complaint as true, as they must, for the purposes of this motion to dismiss.  Defendants preserve all defenses and claims against plaintiffs.

30-second television advertisement supporting the candidates "for the express use of the Simmons and Zimmerman campaign." (Compl. ¶ 12.) That television commercial is found at Exhibit A (hereafter, "Plaintiffs' Commercial.")[2]

In the 2010 election commercial, Simmons states "Stop the perks and insider deals." (Plaintiffs' Commercial, 0:16-0:17.) Simmons also states "Together, let's make government work, for us." (Plaintiffs' Commercial, 0:21-0:24.) Simmons did not win the 2010 election, but was appointed as a Freeholder in January 2011 to fill the balance of the term held by a resigning Freeholder.   Simmons ran again for Freeholder in 2011 and prevailed in that campaign.

Plaintiffs allege that in October and November of 2011, defendants created a "political advertisement" that contained the "unauthorized use of the plaintiffs' footage." (Compl. ¶ 15.)  That television commercial is found at Exhibit B, and lasts 30 seconds. (Hereafter, "Defendants' Commercial.") At the beginning of Defendants' Commercial, a black screen reads: "Last year, we heard…" while a narrator identifies Simmons' position: "Heather Simmons is running as a reformer." (Defendants' Commercial 0:00-0:02.) Defendants' Commercial then shows Simmons saying "Stop the perks and insider deals," and "Together, let's make government work, for us." (0:03-0:07.) Audio and visual components

---

[2]    Exhibits A and B to this Memorandum will be submitted separately as they are in a format which does not allow them to be filed by Electronic Case Filing.

showing Simmons making these two statements were taken from Plaintiffs' Commercial.

Defendants' Commercial then criticizes Simmons for making these two statements. The narrator says, "But really, she's just out for herself…" while the screen reads "Actually, government works for Heather Simmons." (Plaintiffs' Commercial, 0:08-0:10.)

Next, the screen shows one frame of Plaintiffs' Commercial, frozen and closing in on Simmons' face. While showing Simmons' face, the narrator continues: "…collecting over a quarter-million dollars in no-bid government contracts." Before Simmons' face, a list of nine government entities scrolls through the screen, ending with the screen showing that Simmons collected "$256,507 in no bid contracts." (Plaintiffs commercial, 0:10-0:17.) The remaining 13 seconds again challenge Simmons' candidacy and conclude with an alternative political choice.

Defendants' Commercial

| Screen | Speaker | Duration |
|--------|---------|----------|
| "Last year, we heard…" | Narrator: "Heather Simmons is running as a reformer." | 2 seconds |
| Simmons speaking | Simmons: "Stop the perks and insider deals" … Together, let's make government work, for us." | 5 seconds<br><br>Copied from Plaintiffs' Commercial. |
| "Actually, government works for Heather Simmons." | Narrator: "But really, she's just out for herself." | 3 seconds |
| Freeze frame of Simmons, and scroll of sums in nine no-bid contracts | Narrator: "Collecting over a quarter-million dollars in no-bid government contracts." | 8 seconds<br><br>Single frame from Plaintiffs' commercial. |

Defendants' Commercial ran in the 2011 election cycle.  Over eighteen months later, on June 13, 2013, plaintiffs' Complaint was filed.

In Count I, plaintiffs assert a claim of copyright infringement, yet plaintiffs *never* allege that they have obtained a registration for the copyright in their 2010 commercial.

In Count II, plaintiffs assert a claim for tortious interference with prospective economic advantage.  Count III consists solely of a claim for an injunction, damages and punitive damages, with no supporting cause of action alleged.

## III.   <u>ANALYSIS</u>

### A.   Standards for Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6).

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher,* 423 F.3d 347, 351 (3d Cir. 2005).

Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. *Bogosian v. Gulf Oil Corp.,* 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 149–50 n. 3 (1984).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Bell Atlantic v. Twombly,* 550 U.S. 544, 563 n. 8, (2007) (quoting *Scheuer v. Rhoades,* 416 U.S. 232, 236 (1974)); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the

pleading standard for 'all civil actions' ...."); *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* ... provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*.").

Following the *Twombly/Iqbal* standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler,* 578 F.3d at 210 (citing *Iqbal,* 129 S.Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* (quoting *Iqbal*).

A complaint must do more than allege the plaintiff's entitlement to relief. *Id.*; *see also Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. *In re Burlington*

*Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir. 1997). The plaintiff

must show a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

The defendant bears the burden of showing that no claim has been

presented. *Hedges v. United States,* 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr*

*Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991)).

"[D]etermining whether a complaint states a plausible claim is context-

specific, requiring the reviewing court to draw on its experience and common

sense." *Iqbal*, 556 U.S. 662, 663-64 (2009). In making this determination in

reviewing a Rule 12(b)(6) motion, the Court must only consider the facts alleged in

the pleadings, the documents attached thereto as exhibits, and matters of judicial

notice.  *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,* 181 F.3d

410, 426 (3d Cir. 1999).

However, a court may consider as part of these facts "an undisputedly

authentic document that a defendant attaches as an exhibit to a motion to dismiss if

the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v.*

*White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Here, the inclusion

of underlying videos does not convert this motion to dismiss to one for summary

judgment because plaintiffs referred to these documents in the Complaint, and

therefore the videos are "integral" to the Complaint. *In re Rockefeller Ctr. Props.,*

*Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999); *Zucker v. Quasha*, 891 F. Supp.

1010, 1013 (D.N.J. 1995) (citing *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192,1196–97 (3d Cir. 1993)); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) ("Even if a "[c]omplaint does not *explicitly* refer to or cite [a document]...the critical [issue] is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited.")

## B. Failure to State a Copyright Infringement Claim in Count I

To claim copyright infringement, the Copyright Act requires two elements: ownership of a valid copyright registration, and copying of constituent elements of the work that are original. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 203 (3d Cir. 2005); *Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 561 (3d Cir. 2002); *see also Dawes-Lloyd v. Publish Am., LLLP*, 441 F. App'x 956 (3d Cir. 2011) (dismissing claim for lack of copyright registration). Here, Plaintiffs cannot prove they possess the required registration, nor can they escape the doctrine of fair use.

### i. *Count I must be dismissed because plaintiffs have no copyright registration.*

"The Copyright Act requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157, 158 (2010) (citing 17 U.S.C. § 411(a) and stating the Copyright Act "establishes a condition—copyright registration—that plaintiffs ordinarily must

satisfy before filing an infringement claim and invoking the Act's remedial provisions."); *see also Dawes-Lloyd v. Publish Am., LLLP,* 441 F. App'x 956 (3d Cir. 2011) (citing 17 U.S.C. § 411(a) ("An action for infringement of a copyright may not be brought until the copyright is registered."); *Telebrands Corp. v. Exceptional Products Inc.,* No. 11–CV–2252, 2011 WL 6029402, at *3 (D.N.J. Dec.5, 2011) ("a party may not state a prima facie case of copyright infringement where the party does not hold a registered copyright in accordance with 17 U.S.C. § 411(a)"); *4C, Inc. v. Pouls*, No. 11-00778 JEI, 2012 WL 2343042 (D. Del. June 19, 2012) (Irenas, J., dismissing complaint for lack of copyright registration and granting attorneys' fees); *Levey v. Brownstone Inv. Grp., LLC*, No. 11-395 ES, 2012 WL 295718 (D.N.J. Feb. 1, 2012) (Salas, J., "[T]he law is clear: copyright holders must register their works *before* suing for copyright infringement.) (emphasis in original); *Sims v. Viacom, Inc.*, 2:11-CV-0675, 2012 WL 280609 (W.D. Pa. Jan. 31, 2012).

Plaintiffs do not claim to have a copyright registration in Plaintiffs' Commercial. Plaintiffs thus fail to "state a claim to relief that is plausible on its face," and Count I should be dismissed. *Reed Elsevier*, 559 U.S. at 157*,* 158; *Iqbal*, 556 U.S. at 678.

9

### ii.    Defendants' actions constitute fair use.

Not all uses of copyrighted works require permission. Among the accommodations built-in to copyright law is the fair use doctrine. The fair use doctrine, codified at 17 U.S.C. § 107, allows the public to use not only facts and ideas contained in a copyrighted work, but also the expression itself for certain purposes. Section 107 codifies fair use:

> § 107. Limitations on exclusive rights: Fair use
>
> Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include-
>
> > (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> > (2) the nature of the copyrighted work;
> > (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> > (4) the effect of the use upon the potential market for or value of the copyrighted work.

"Fair use" thereby affords considerable latitude for scholarship, comment, or criticism. *Eldred v. Ashcroft*, 537 U.S. 186, 190 (2003). When a Court reviews whether the defendant's work falls within the "considerable latitude" for fair use,

"[t]he task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 576-77 (1994).

Although an affirmative defense, fair use may be reviewed on a motion to dismiss. Federal courts do review whether a fair use defense is ripe for determination on a motion to dismiss. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690, 694 (7th Cir. 2012) (affirming a "well-reasoned and delightful opinion" dismissing a complaint based on fair use, because "the only two pieces of evidence needed to decide the question of fair use in this case are the [original video] and the [parody video] at issue."); *Faulkner Literary Rights, LLC v. Sony Pictures Classics Inc.*, No. 3:12CV100, 2013 WL 3762270, *4, *n.4 (N.D. Miss. July 18, 2013) (Mills, C.J., dismissing complaint based on fair use factors, and stating a claim may be dismissed "if a successful affirmative defense appears clearly on the face of the pleadings" (quoting *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986)); *Righthaven LLC v. Realty One Grp.*, *Inc.*, 2:10-CV-1036-LRH-PAL, 2010 WL 4115413 (D. Nev. Oct. 19, 2010) (dismissing complaint based on fair use on motion to dismiss); *Ascend Health Corp. v. Wells*, No. 4:12-CV-00083-BR, 2013 WL 1010589, *12, *15 (E.D.N.C. Mar. 14, 2013) (dismissing copyright claim on motion to dismiss, and recognizing that affirmative defense may be reached at motion to dismiss stage) (citing *Goodman v. Praxair,*

11

*Inc.,* 494 F.3d 458, 464 (4th Cir.2007); *see also*, *Shell v. City of Radford*, 351 F. Supp. 2d 510, 513 (W.D. Va. 2005) (treating motion to dismiss as motion for summary judgment, and finding fair use); *Hart v. Electronic Arts, Inc.*, 717 F.3d 141, 147 (3rd Cir. 2013) (reviewing fair use on motion brought as motion to dismiss, "or, in the alternative, summary judgment").

Here, the fair use analysis demonstrates that plaintiffs' copyright infringement claim is barred by the fair use doctrine.

1. *Purpose and character of the use, including whether for commercial or non-commercial purpose.*

The first factor in a fair use enquiry is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." (§107(1)) "The central purpose of this investigation is to see whether the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579 (citations omitted) *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 342 F.3d 191, 199 (3d Cir. 2003) (finding clips from Disney movies and infringer's "preview clips" held same "character and purpose" and so were not transformative); *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1269 (11th Cir. 2001) (finding "for-profit status is strongly overshadowed and

outweighed in view of its highly transformative use of [novel's] copyrighted elements" in criticizing and commenting on characters from Margaret Mitchell's novel *Gone with the Wind*).

This factor favors a finding of fair use for three reasons.

First, this political message is transformative. *Campbell*, 510 U.S. at 579. The transformation and new message is that rather than being a "reformer" who reduces taxes and government spending, Simmons received taxpayer funded, government-work.

Defendants' Commercial identifies Simmons' call for a "stop" to "perks and insider deals" and the appeal to the electorate to improve the government: "Together, let's make government work, for us." But the commercial challenges these pleas, commenting that Simmons is "just out for herself," and that "Actually, government works for Heather Simmons." Defendants' Commercial then explains that Simmons collected over $250,000 of "no-bid" government contracts.

Defendants' Commercial used the same audio and visual components of the two sentences to prove that Simmons had committed to making those statements in a prepared advertisement, and to show that Simmons should be credited with making those statements. Defendants challenged Simmons' candidacy to make a new request: choose the alternative candidates. Defendants' new message is the antithesis of plaintiffs' message, so it is "transformative."

Second, Defendants' Commercial was not made, used, or sold for commercial gain. Instead, Defendants' Commercial was made for public education about a 2011 political candidate for the Gloucester County Freeholder position (0:00-0:22) and the alternative candidates (0:23-0:30).

Third and last, the purpose and character of Defendants' Commercial is to make a political speech to educate the electorate about Simmons' 2011 bid for election. As political commentary on plaintiffs' own electioneering speech, First Amendment and fair use protections are at their peak; copyright protection in the original work pales in comparison. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339-40 (2010) ("The First Amendment 'has its fullest and most urgent application' to speech uttered during a campaign for political office.") (citing *Eu v. San Francisco County Democratic Central Comm.,* 489 U.S. 214, 223, (1989); *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 272 (1971); *see also Buckley v. Valeo*, 424 U.S. 1, 14 (1976) ("Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution.").

As political speech which transformed a snippet of Plaintiffs' Commercial to create a new message, for non-commercial purposes and in the course of a political contest, this factor favors a finding of fair use.

### 2. *Nature of the copyrighted work*

The second statutory factor, "the nature of the copyrighted work," § 107(2), calls for recognition that some works are creative, and so closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the purely creative or commercial works are copied. *See Stewart v. Abend,* 495 U.S.207, 237-238 (1990) (contrasting fictional short story with factual works); *Feist,* 499 U.S. at 348-351 (contrasting creative works with bare factual compilations); *Lucent Info. Mgmt., Inc. v. Lucent Technologies, Inc.*, 5 F. Supp. 2d 238, 242-43 (D. Del. 1998) (finding work that was not meant to be creative or original, but merely meant to communicate to potential customers an entity was being formed, weighed in favor of a finding of fair use, because the use was of a "manifestly factual character.").

Plaintiffs' Commercial is a political call for reform. As political speech, plaintiffs' work begs to be challenged. *Citizens United*, 558 U.S. at 354-55 (discussing censorship and stating that messages to the electorate that a candidate may be hostile to the public's interest, are not checked by federal law, but "by permitting all to speak, and by entrusting the people to judge what is true and what is false.") (citing J. Madison, The Federalist, No. 10, p. 130 (B. Wright ed. 1961)).

Plaintiffs' Commercial is an ad meant to influence the public about a candidate. The nature of such a right is as far from the core interests protectable by

copyright as can be. Whatever creativity exists in this political speech, that

creativity is protected only at the boundaries of copyright protection – a boundary

further limited by fair use. *See Brownmark Films*, 682 F.3d at 693.

This factor also favors a finding of fair use.

*3. Amount and substantiality of the portion used*

The third factor (§ 107(3)) asks whether "the amount and substantiality of

the portion used in relation to the copyrighted work as a whole," is reasonable in

relation to the purpose of the copying. Here, attention turns to the persuasiveness

of author of the political criticism, and the justification for the particular copying

done. *Campbell*, 510 U.S. at 586. The inquiry harkens back to the first of the

statutory factors, in recognition that the extent of permissible copying varies with

the purpose and character of the use. *Id.* (citing *Sony Corp. of America v. Universal

City Studios, Inc.,* 464 U.S. 417, 449-450 (1984)(finding reproduction of entire

work was permissible in context of time-shifting for videotaping of television

programs); *Harper & Row,* 471 U.S., 539, 564 (1985) ("[E]ven substantial

quotations might qualify as fair use in a review of a published work or a news

account of a speech."); *Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 424

(E.D. Pa. 2009) (finding percentage of work used was "reasonable in relation to the

purpose of the copying" where "Plaintiffs could not reasonably be expected to take

anything less; the entire point of using these covers is to portray [an artist's] work.").

Here, Defendants' Commercial uses five seconds of the Simmons election commercial to recap Simmons' 2010 call for reform, followed by one single frame, frozen on Simmons' call for reform.

These two sentences are a small portion of the statements in Plaintiffs' Commercial.  Others include "Property taxes out of control," "Families moving," "Enough is enough," "Runaway spending," or "The reform team." Defendants chose five seconds of a 30-second commercial, to identify and criticize Simmons. Defendants would have been hard-pressed to use any less material than the two sentences to criticize the positions asserted by Simmons.  The quantity of content used is low.

Further, unlike *Harper & Row*, 471 U.S. at 564-65, where the "heart" of the work was used, here defendants focused only on one of several political messages, for example "It's time to freeze government spending." (spoken by Zimmerman); "We're citizens, not career politicians." (Zimmerman); "We need your help to stop runaway spending that's taxing us out of our homes." (Simmons); or other slogans identified above. (*See* Plaintiffs' Commercial.) By using only two of Simmons' statements, defendants used neither an unreasonable quantity of the work nor the

"heart" of the work. *Harper & Row*, 471 U.S. at 564-65. This factor favors a finding of fair use.

   *4. Effect on market or value of copyrighted work.*

   The fourth fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." § 107(4). The Court considers not only the extent of market harm caused by the alleged infringer, but also "whether unrestricted and widespread conduct of the sort engaged in by the defendant ... would result in a substantially adverse impact on the potential market" for the original. *Campbell*, 510 U.S. at 590 (reviewing case law, treatise, and Senate report); *Harper & Row,* 471 U.S., at 569.

   Under this factor, courts have found certain "effects" on the marketplace to be non-cognizable. *See Campbell*, 510 U.S. at 591-92 (stating that should a parody, like a "lethal" or "scathing" theater review, "kill[] demand for the original," there is still "no harm cognizable under the Copyright Act;" and that while "parody may quite legitimately aim at garroting the original, destroying it commercially as well as artistically," the role of the courts is to distinguish between "[b]iting criticism [that merely] suppresses demand [and] copyright infringement[, which] usurps it.")

   While parody may be sufficient to create a non-cognizable harm, it is political speech which is "at the core of the First Amendment." *Boos v. Barry*, 485 U.S. 312, 318 (1988), especially concerning the electorate's choices for office.

18

*New York Times v. Sullivan*, 367 U.S. 254, 270 (1964) (stating there is a "profound national commitment" that "debate on public issues should be uninhibited, robust, and wide-open."); *Roth v. United States*, 354 U.S. 476, 484 (1957) ( "[d]iscussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by our Constitution," so the "First Amendment affords the broadest protection to such political expression in order to assure [the] unfettered interchange of ideas for the bringing about of political and social changes desired by the people."); *Meyer v. Grant*, U.S. 414. 420 (1988) ("limitation on political speech [is] subject to exacting scrutiny"); *First Nat. Bank of Boston v. Bellotti*, 435 U.S. 765, 776 -777 (1978) (speech on income-tax referendum "is at the heart of the First Amendment's protection"); *Lovell v. Griffin*, 303 U.S. 444 (1938) (finding advocacy of a politically controversial viewpoint is the essence of First Amendment expression).

Like parody, "political speech by its nature will sometimes have unpalatable consequences," *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995) (quoting *Abrams v. United States*, 250 U.S. 616, 630-31 (1919) (Holmes, J., dissenting). ("in general, our society accords greater weight to the value of free speech than to the dangers of its misuse.")

Like the non-cognizable harm of "killing" demand with a parody, even if defendants' political speech was "lethal" to Simmons' candidacy, the defendants'

19

non-commercial political criticism cannot be considered a cognizable "effect on the market." *Campbell*, 510 U.S. at 591-92.

In addition to the instant copyrighted work not having a cognizable "effect on the market" because it is political speech, the work was also non-commercial. The Supreme Court has found that the "the 'fact that a publication was commercial as to nonprofit is a separate factor that tends to weigh against a finding of fair use.'" *Campbell*, 510 U.S. at 585 (quoting *Harper & Row*, 471 U.S. at 562); *see also Harper & Row*, 471 U.S. at 562 ("The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price"); *Video Pipeline*; 342 F.3d at 198. Here, Plaintiffs' Commercial was not made for commercial purposes, but to influence the electorate.

Further, there can be no "effect" on the market for the original because now, three years later, there *is no market* for plaintiffs' 2010 Freeholder election commercial. Plaintiffs' Commercial was specifically created for the November 2010 election cycle, and after that it served no further purpose.

As with the previous factors, this factor favors defendants.

In conclusion, because defendants' limited use for political commentary of audio-visual components covering two sentences falls precisely within the fair use

doctrine, the claim for copyright infringement is not plausible, *Iqbal*, 556 U.S. at 678, and should be dismissed with prejudice.

### C. Plaintiffs' tortious interference claim is preempted under the Supremacy Clause, and should be dismissed.

The Supreme Court has defined three circumstances in which "state law is pre-empted under the Supremacy Clause." *English v. Gen. Elec. Co.,* 496 U.S. 72, 79 (1990) (citing U.S. Const., Art. VI, cl. 2). The three circumstances are (1) explicit preemption; (2) field preemption (where Congress regulates a field that Congress intended the federal government to occupy exclusively); and (3) conflict preemption, where "state law is preempted to the extent that it actually conflicts with federal law." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95-98 (1983); *Orson v. Miramax Film Corp.*, 189 F.3d 377, 382 (3d Cir. 1999) (finding conflict preemption leads to the "ineluctable conclusion that the [state law] cannot stand because it prohibits the copyright holder from exercising rights protected by the Copyright Act). Here, plaintiffs' claim is preempted under explicit preemption and conflict preemption.

#### i. Plaintiffs' tortious interference claim is explicitly pre-empted by § 301 of the Copyright Act.

Section 301 of the Copyright Act explicitly preempts state laws that (1) fall within the subject matter of the federal copyright law and protect works that are fixed in tangible medium of expression; and (2) create legal or equitable that are

equivalent to any of the exclusive rights granted to the copyright holder and

specified in section 106. *Jarvis v. A&M Records,* 827 F. Supp. 282, 296 (D. N.J.

1993) (collecting cases); 17 U.S.C. § 301.

Section 301 states in relevant part:

> [A]ll legal or equitable rights that are equivalent to any of
> the exclusive rights within the general scope
> of copyright as specified by section 106 in works of
> authorship that are fixed in a tangible medium of
> expression and come within the subject matter
> of copyright as specified by sections 102 and 103 ... are
> governed exclusively by this title. Thereafter, no person
> is entitled to any such right or equivalent right in any
> such work under the common law or statutes of any state.

The issue here is whether the state common law tort asserted by plaintiffs

consist of a right which is "equivalent to" any of the exclusive rights granted to the

copyright holder under § 106. If so, they are preempted. To determine whether a

state law claim is "equivalent," and thereby preempted by federal copyright law,

the Third Circuit has adopted a functional test: "if a state cause of action requires

an extra element beyond mere copying, preparation of derivative works,

performance, distribution or display, then the state cause of action is qualitatively

different from, and not subsumed within, a copyright infringement claim and

federal law will not preempt the state action." *Rudolph v. Yari Film Grp.*

*Releasing*, CIV.A. 06-CV-1511DMC, 2007 WL 674708 (D.N.J. Feb. 23, 2007);

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,* 307 F.3d 197,

217 (3d Cir.2002); *Profoot, Inc. v. MSD Consumer Care, Inc.*, CIV. 11-7079, 2012 WL 1231984 *5 (D.N.J. Apr. 12, 2012) (unpublished) (finding claim for unjust enrichment preempted by the Copyright Act); *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.,* 210 F.Supp.2d 552, 564 (D.N.J. 2002) (Simandle, J., finding state law claims for "misappropriation" are generally preempted by Copyright Act, § 301).

In Count I, plaintiffs allege defendants' "wrongful" conduct was "misappropriating plaintiffs' copyrighted material" (Compl. ¶¶ 20, 23). In Count II, plaintiffs repeat the allegation that defendants' "wrongful" conduct was "misappropriating the plaintiffs' property," where the only "property" identified in the Complaint is plaintiffs' copyright in video footage. (*See* Compl. ¶¶ 12-14, 17. 18. 27.)

The factual allegations which support plaintiffs' state law claim are premised *entirely* upon defendants' alleged copying of plaintiffs' work. Because plaintiffs cannot distinguish the underlying factual predicate of the infringement claim with that of the state law claim, plaintiffs' state law claims are preempted by the Copyright Act and should be dismissed. *Video Pipeline,* 210 F.Supp.2d at 564.

### ii. Count II violates the Supremacy Clause due to conflict preemption.

When a state law creates an "obstacle" to a Congressional purpose, the state law is invalid. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73

(2000) (invalidating state law interfering with international trade policy). Any conflict with the fair use doctrine, codified at § 107 of the Copyright Act, and the First Amendment rights at stake, cannot survive the Court's review.

Count II is a state law claim for tortious interference with prospective economic advantage. This claim is preempted under conflict preemption because the same conduct complained of in the copyright infringement count, falls within the codified doctrine of fair use. 17 U.S.C. § 107.

Here, plaintiffs attempt to twist a complaint against defendants' political commentary into a nebulous common law claim. But fair use of another's work cannot be federally authorized under § 107, yet "wrongful" under state common law, without the state creating an obstacle to a Congressional, and Constitutional, purpose. As stated above, because defendants' use of five seconds of a political ad to criticize a political candidate falls squarely within the federal fair use doctrine, the same conduct cannot also be "wrongful" under state law. Therefore, Count II is invalid and preempted by the Supremacy Clause and § 107. Count II should be dismissed.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, plaintiffs have failed to assert a valid cause of action for copyright infringement or tortious interference with economic advantage.  As Count III consists solely of a claim for damages, unsupported by an independent cause of action, Defendants respectfully request this Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

 /s/ Anthony J. DiMarino, III

Date: August 5, 2013        Anthony J. DiMarino, III
Emmett S. Collazo
**A.J. DiMARINO, P.C.**
57 Euclid Street, Suite A
Woodbury, NJ 08096

Counsel for Defendants
Gloucester County
Republican Committee,
GOP Victory 2011, and
Mark Cimino

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony J. DiMarino, III, counsel to defendants, hereby certify that the foregoing Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim Under FED.R.CIV.P. 12(b)(6), Memorandum in Support and Proposed form of Order were filed this 5th day of August, 2013 via the Electronic Court Filing ("ECF") System of the United States District Court for the District of New Jersey and are available for viewing and downloading from the ECF System.  The below-named counsel for Plaintiffs has consented to electronic service via the ECF System and will receive service of the Notice of Electronic Case Filing automatically:

        John A. Alice, Esq.
        28 Cooper Street
        Woodbury, NJ  08096


                /s/ Anthony J. DiMarino, III
                Anthony J. DiMarino, III