## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

BLUEWIRE MEDIA, LLC AND
STEVEN ACITO,

    Plaintiffs,

  v.


GLOUCESTER COUNTY REPUBLICAN
COMMITTEE, GOP VICTORY 2011,
MARK CIMINO, AND JOHN DOES 1
THROUGH 10,

    Defendants.

Civil No. 13-3667 (NLH/KMW)

**OPINION**

---

**APPEARANCES:**

John A. Alice, Esquire
28 Cooper Street
Woodbury, New Jersey 08096
 *Attorney for Plaintiffs Bluewire Media, LLC and Steven*
 *Acito*

A.J. DiMarino, III, Esquire
Emmett S. Collazo
57 Euclid Street
Suite A
Woodbury, New Jersey 08096
 *Attorney for Defendants Gloucester County Republican*
 *Committee, GOP Victory 2011, and Mark Cimino*


**HILLMAN, District Judge**

 This matter comes before the Court by way of a motion [Doc.
No. 6] to dismiss Plaintiffs' complaint pursuant to Federal Rule
of Civil Procedure 12(b)(6) for failure to state a claim upon
which relief can be granted brought by Defendants Gloucester

County Republican Committee, GOP Victory 2011, and Mark Cimino. Plaintiffs Bluewire Media and Steven Acito (collectively "Bluewire" of "Plaintiffs") oppose Defendants' motion. The Court has considered the parties' submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78.

For the reasons expressed below, Defendants' motion to dismiss will be granted.


I.   **JURISDICTION**

In this action, Plaintiffs assert a claim for copyright infringement pursuant to the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq., as well as a state law claim for interference with prospective economic advantage. The Court has jurisdiction over Plaintiffs' federal copyright claim pursuant to 28 U.S.C. §§ 1331, 1338, and may exercise supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.


II.  **BACKGROUND**

Plaintiff Bluewire Media LLC is a limited liability corporation that, along with Plaintiff Steven Acito, "develops television, radio, print, informational and advertising pieces for its clients." (Compl. [Doc. No. 1] ¶¶ 3-4.) According to the complaint, Plaintiffs "are well regarded producers of" these types of work. (Id. ¶ 10.) Plaintiffs allege that they "spend

2

substantial amounts of time, money, and effort creating,
editing, and distributing their copyrighted products." (Id.)
As part of Bluewire's business, Plaintiffs "create [and sell]
advertising, promotional campaigns and political spots ... to
their clients" for use "in print, on the radio, for television
... or [as a] targeted video." (Id. ¶ 11.)  Plaintiffs assert
that their "business and profitability depend[] on [P]laintiffs'
ability to control who may utilize their work product" which is
"created expressly for the use of their clients." (Id.)
Plaintiffs contend that any "unauthorized use of their work
product may dilute the integrity and value of the work product
or ... cast the work product or client in a poor light." (Id.)

    At some unspecified time in 2010, Heather Simmons and
Robert Zimmerman[1] were running for the office of Freeholder in
Gloucester County New Jersey.  Simmons and Zimmerman engaged
Plaintiffs "to create a promotional television advertisement" to
be used in support of their campaign (hereinafter, "the 2010 SZ
Advertisement"). (Id. ¶ 12.)  Plaintiffs' complaint alleges
that the 2010 SZ "[A]dvertisement was created for the express
use of the Simmons and Zimmerman campaign." (Id.)  Plaintiffs
represent that they "own the video footage [and] the master tape
of the video footage[,]" while the Simmons and Zimmerman

---

[1]    Heather Simmons and Robert Zimmerman are not parties to
this action.

campaign purchased the finished advertisement.  (Id. ¶ 13.)
Plaintiffs assert that "[n]o party other than plaintiffs, ...
Simmons and ... Zimmerman or their designee has been granted
permission to use in any manner the copyrighted material created
by [P]laintiffs for Simmons and Zimmerman."  (Id. ¶ 13.)
Plaintiffs further represent that "ownership of the ...
advertisement and video footage" has not "been sold to another
party" at any time, nor has "authorization [been] given to
another party to use said advertisement, any component of it, or
any of the video footage."  (Id. ¶ 14.)

        Plaintiffs allege that in October and November of 2011, in
advance of the 2011 Gloucester County Freeholder election, their
"work product ... was used without permission or authorization
in a political advertisement" in support of the campaign of
three different candidates running for Freeholder against
Simmons that year – candidates Capelli, Heritage and Pantaleo.
(Id. ¶ 15.)  Plaintiffs assert that the advertisement in support
of Capelli, Heritage and Pantaleo (hereinafter, "the 2011 CHP
Advertisement") used "unauthorized ... footage" from the 2010 SZ
Advertisement in order to "cast ... Simmons ... in a disparaging
light" during the course of the subsequent 2011 Freeholder
campaign.  (Id.)  According to the complaint, Plaintiffs viewed
the "misappropriated footage numerous times" – not only when the
2011 CHP Advertisement aired on television on the Comcast Cable

4

system, but also on YouTube.com and another internet website entitled "NOBIDHEATHER.COM". (<u>Id.</u> ¶ 17.)

Plaintiffs represent that the 2011 CHP Advertisement was "identified as having been created and/or endorsed by [an entity called] 'GOP Victory 2011'" which apparently shares the same address as Defendant Gloucester County Republican Committee. (<u>Id.</u> ¶ 16.)  Plaintiffs subsequently contacted Comcast to determine what person or entity paid for the airing of the 2011 CHP Advertisement containing the allegedly misappropriated footage from the 2010 SZ Advertisement.  (<u>Id.</u> ¶ 18).  Through this process, Plaintiffs determined that Defendant Mark Cimino paid for the 2011 CHP Advertisement to air.  (<u>Id.</u>)  Plaintiffs allege that they sent letters to Defendant Cimino and Defendant Gloucester County Republican Committee notifying Defendants of this "unauthorized use of [P]laintiffs' property with instructions to immediately cease and desist" from using the footage.  (<u>Id.</u> ¶ 19.)

Plaintiffs assert that despite receipt of the cease and desist letters sent on November 2, 2011 and November 4, 2011, respectively, Defendants continued to use Plaintiffs' copyrighted material which was "shown repeatedly on the aforementioned sites[.]"  (<u>Id.</u>)  It is Defendants' unauthorized use of portions of the 2010 SZ Advertisement as part of the 2011 CHP Advertisement that Plaintiffs allege give rise to their

claim of copyright infringement. (Id. ¶ 22).  Plaintiffs seek relief in the form of an injunction, statutory damages, punitive damages, and attorneys' fees.

III. **DISCUSSION**

Defendants now move to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims[.]'"  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions[.]'") (citation omitted).  First, under the Twombly/Iqbal standard, a district court "must accept all of the

complaint's well pleaded facts as true, but may disregard any legal conclusions." Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Iqbal, 129 S. Ct. at 1949).

Second, a district court "must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Fowler, 578 F.3d at 211 (citing Iqbal, 129 S. Ct. at 1950). "[A] complaint must do more than allege the plaintiff's entitlement to relief." Fowler, 578 F.3d at 211; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.") (citing Twombly, 550 U.S. at 556). "The defendant bears the burden of showing that no claim has been presented." Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).


IV. **ANALYSIS**

In the instant motion, Defendants seek the dismissal of all of Plaintiffs' claims. With respect to Count I, Defendants

challenge the sufficiency of Bluewire's complaint to establish a
claim for copyright infringement pursuant to the Copyright Act
of 1976.  Specifically, Defendants argue that Plaintiffs fail to
state a claim for copyright infringement because the complaint
does not allege that Plaintiffs obtained a registration for the
copyright in the 2010 SZ Advertisement.  (Mem. in Supp. of
Defs.' Mot. to Dismiss Pls.' Compl. For Failure to State a Claim
[Doc. No. 6-1] (hereinafter, "Defs.' Mem."), 4, 8-9.)
Alternatively, Defendants argue that even if Plaintiffs have
sufficiently alleged a prima facie case of copyright
infringement, Count I should still be dismissed because
Defendants use of the 2010 SZ Advertisement constitutes "fair
use" of the copyrighted material under 17 U.S.C. § 107.  (Id. at
10-20.)  Additionally, with respect Plaintiffs' state law claim
for interference with prospective economic advantage as alleged
in Count II, Defendants contend that this claim is preempted
under the Supremacy Clause as a result of both explicit
preemption and conflict preemption.  (Id. at 21-24.)

    As the Third Circuit has previously explained, "Congress is
specifically empowered [by Constitutional mandate] 'To promote
the Progress of Science and useful Arts, by securing for limited
Time to Authors and Inventors the exclusive Right to their
respective Writings and Discoveries.'"  Dun & Bradstreet
Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197,

8

206 (3d Cir. 2002) (citing U.S. CONST. ART. I, § 8).

"Exercising this power, Congress has crafted a comprehensive statutory scheme governing the existence and scope of '[c]opyright protection' for 'original works of authorship fixed in any tangible medium of expression.'" Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 157 (U.S. 2010) (citing 17 U.S.C. § 102(a)).

"Congress enacted the first copyright statute as early as 1790[,]" and the "existing copyright laws are codified in the Copyright Act of 1976 (the Act)." Dun, 307 F.3d at 206. The Copyright Act provides in pertinent part that:

> (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:
>
> (1) literary works;
> (2) musical works, including any accompanying words;
> (3) dramatic works, including any accompanying music;
> (4) pantomimes and choreographic works;
> (5) pictorial, graphic, and sculptural works;
> (6) motion pictures and other audiovisual works;
> (7) sound recordings; and
> (8) architectural works.…

17 U.S.C. 102(a). It appears that with respect to the 2010 SZ Advertisement, Plaintiffs are proceeding under subsection six

which subjects motion pictures and other audiovisual works to copyright projection.

Under Section 106 of the Copyright Act, the owner of a copyright maintains the exclusive rights to do and to authorize any of the following:

> (1) to reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted work;
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and
> (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106

As the United Supreme Court has succinctly explained, "[t]his scheme gives copyright owners 'the exclusive rights' (with specified statutory exceptions) to distribute, reproduce, or publicly perform their works." Reed Elsevier, 559 U.S. at 157 (citing 17 U.S.C. §§ 106, 501(a)-(b)). Therefore, "'[a]nyone who violates any of the exclusive rights of the copyright owner as provided' in the Act 'is an infringer of the

copyright[,]'" and "[w]hen such infringement occurs, a copyright owner 'is entitled, subject to the requirements of section 411, to institute an action' for copyright infringement."  Id.

Generally, "'[t]o establish a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright, and (2) unauthorized copying of original elements of plaintiff's work.'"  Kay Berry, Inc. v. Taylor Gifts, Inc., 421 F.3d 199, 203 (3d Cir. 2005) (citing Dun, 307 F.3d at 206).  "In this context, 'copying' means the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106 [above], including the rights to distribute and reproduce copyrighted material."  Journal of African Civilizations Ltd., Inc. v. Transaction Publishers, No. 11-6268, 2013 WL 6498983, at *3 (D.N.J. Dec. 11, 2013) (citing Kay Berry, 421 F.3d at 207) (internal quotations omitted).

Relevant to resolution of Defendants' motion, "Section 411(a) provides, inter alia and with certain exceptions, that 'no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.'"  Reed Elsevier, 559 U.S. at 157-58 (citing 17

11

U.S.C. § 411(a)).[2]  Thus, as part of the Act's remedial scheme, Section 411(a) "establishes a condition — copyright registration — that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the Act's remedial provisions." Id. at 158.  Consistent with the requirements of Section 411(a), courts in this District routinely dismiss claims for copyright infringement where the plaintiff fails to plead registration of the copyright for the work that is the subject of the action. See, e.g., North Jersey Media Group Inc. v. Sasson, No. 2:12-3568, 2013 WL 74237, at *2-3 (D.N.J. Jan. 04, 2013) (finding that "until [plaintiff] holds a certificate of copyright registration for the [works at issue], [plaintiff] cannot state a prima facie claim of copyright infringement for any of those works" and dismissing copyright infringement claims); Levey v. Brownstone Inv. Group, LLC., No. 11-395, 2012 WL 295718, at *3 (D.N.J. Feb. 1, 2012) (dismissing plaintiff's amended complaint and finding that plaintiff could not state a prima facie case for copyright infringement because he did not hold a registered copyright at the time he filed his amended complaint); Goodman

---

[2]    Section "411(a) expressly allows courts to adjudicate infringement claims involving unregistered works in three circumstances: where the work is not a U.S. work, where the infringement claim concerns rights of attribution and integrity under § 106A, or where the holder attempted to register the work and registration was refused." Reed Elsevier, 559 U.S. at 165. It appears that none of the exceptions set forth in Section 411(a) are relevant in this case.

v. Harry Fox Agency, No. 03-1176, 2003 WL 25269381, at *7-8
(D.N.J Dec. 30, 2003) (dismissing plaintiff's copyright
infringement claims where plaintiff did "not allege possession
of a valid copyright registration").

Here, Defendants argue that Plaintiffs fail to state a
claim for relief that is plausible on the face of the complaint
because Plaintiffs do not plead that they "have a copyright
registration in" the 2010 SZ Advertisement, and therefore
Plaintiffs' copyright infringement claim must be dismissed.
(Defs.' Mem. 9.)  Although Plaintiffs filed opposition to the
current motion, their opposition brief does not specifically
address Defendants' argument regarding their failure to allege
the existence of a copyright registration for the 2010 SZ
Advertisement.

However, to determine whether Plaintiffs have sufficiently
stated a claim for copyright infringement, the Court must review
the complaint and accept all well-pleaded factual allegations as
true and draw all reasonable inferences in favor of Plaintiffs,
the non-moving party.  Accordingly, the Court notes that
Plaintiffs' complaint makes the following relevant allegations
with respect to their copyright infringement claim for the 2010
SZ Advertisement:

- "Plaintiffs own the video footage, the master tape of the
  video footage with the Simmons and Zimmerman campaign
  purchasing the finished advertisement.  Simmons and

13

Zimmerman own the finished advertisement along with plaintiffs[,]" (Compl. ¶ 13);

- "No party other than plaintiffs, ... Simmons and ... Zimmerman or their designee has been granted permission to use in any manner the copyrighted material created by plaintiffs for Simmons and Zimmerman[,]" (id.);

- "At no time has ownership of the aforementioned advertisement and video footage been sold to another party or authorization given to another party to use said advertisement, any component of it, or any of the video footage[,]" (id. ¶ 14);

- "[A]fter receipt of the [cease and desist] letter, plaintiffs' copyrighted material was shown repeatedly on" television and the internet, (id. ¶ 19);

- "For their own profit and advantage, defendants have misappropriated the plaintiffs' copyrighted material[,]" (id. ¶ 20);

- "Defendants' conduct violated the exclusive rights belonging to plaintiffs as owners of the said copyrighted material ..." (id. ¶ 22).

Despite the Court's thorough review, it is clear that none of the allegations set forth above or in the remainder of the complaint plead the necessary precondition to filing a claim for copyright infringement – that Plaintiffs hold a registered copyright in the 2010 SZ Advertisement as required under Section 411(a). In the absence of this required allegation, given Plaintiffs' failure to address this argument in opposition to the motion to dismiss, the Court finds that Plaintiffs are unable to state a prima facie case for copyright infringement, and Count I of the complaint must be dismissed. See Telebrands Corp. v. Exceptional Products Inc., No. 11-2252, 2011 WL 6029402, at *3 (D.N.J. Dec. 05, 2011) (observing "that a party may not state a prima facie case of copyright infringement where

the party does not hold a registered copyright in accordance with 17 U.S.C. § 411(a)) (citing Dawes-Lloyd v. Publish America, LLLP, 441 F. App'x 956, 957 (3d Cir. 2011)).  Although Plaintiffs' complaint alleges in general terms that they own the video footage and master tape of the 2010 SZ Advertisement, and that this material is copyrighted, these allegations are insufficient to demonstrate that Plaintiffs have satisfied the registration requirement set forth in Section 411(a) prior to filing suit.[3]

Finally, in light of the dismissal of Plaintiffs' federal copyright infringement claim, Plaintiffs no longer maintain a cause of action which independently establishes federal subject matter jurisdiction.  Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court, *sua sponte*, declines to exercise supplemental jurisdiction Plaintiffs' state law claim for interference with prospective economic advantage.  Under Section 1367(c)(3), "[a] district court may decline to exercise supplemental jurisdiction over a claim if 'the district court has dismissed all claims over which it has original jurisdiction[.]'"  Oras v. City of Jersey City, 328 F. App'x

---

[3]    Having dismissed Plaintiffs' copyright infringement claim based on Plaintiffs' failure to comply with 17 U.S.C. § 411(a), the Court need not address Defendants' alternative argument that dismissal is also warranted because their use of the 2010 SZ Advertisement in the 2011 CHP Advertisement constitutes fair use as set forth in Section 107 of the Copyright Act of 1976.

772, 775 (3d Cir. 2009) (citing 28 U.S.C. § 1367(c)(3)).
Moreover, as recognized by the Third Circuit, "[w]here the claim
over which the district court has original jurisdiction is
dismissed before trial, the district court *must* decline to
decide the pendent state claims unless considerations of
judicial economy, convenience, and fairness to the parties
provide an affirmative justification for doing so." Oras, 328
F. App'x at 775 (citing Hedges v. Musco, 204 F.3d 109, 123 (3d
Cir. 2000)) (internal quotations omitted) (emphasis in
original).

       In this case, the Court finds that considerations of
judicial economy, convenience, and fairness do not affirmatively
justify the exercise of supplemental jurisdiction given that the
case is in the very early stages of litigation, the parties have
not engaged in any discovery to date, and Defendants have not
yet answered the complaint.  Having declined to exercise
supplemental jurisdiction, the Court dismisses Plaintiffs'
remaining state law claim as set forth in Count II without
prejudice.

**V.    <u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Motion to Dismiss is granted, and Plaintiffs' complaint will be dismissed without prejudice.   An Order consistent with this Opinion will be entered.


Dated: <u> March 24, 2014 </u>             <u>  s/ Noel L. Hillman      </u>
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.